And we move to the third case this morning, United States v. Tingle. Judge Kleene, would it be possible to take a break? Yes, certainly. The court will take a ten-minute recess. Thank you. Mr. Tingle. Good morning. May it please the court, counsel. My name is Daniel Hillis. I'm with the Federal Public Defender's Office, and I'm here today representing Mr. Tingle on this appeal. It's unusual to see you, Mr. Hillis. Yes. It's good to be back. Welcome home is what I was going to say. If the court wasn't so good to give oral arguments, we wouldn't have the pleasure today. So with your indulgence, I will take the issues a little bit out of sequence. I'd like to begin with the third issue that we raised. That's with regard to the grand jury transcripts, because there was a motion that was filed to seek disclosure of the grand jury transcripts. That issue was preserved, unlike some of the issues where we have a plain air standard of review. So with respect to the grand jury transcripts, there was a motion. The motion was denied, but there was no opportunity to argue the motion before it was denied. We think that's an abuse of discretion under the relevant case law that we're able to find in the civil context, that a judge should not deny the motion without giving the party the opportunity, of course, to make the record and present the legal arguments to the judge before she undertakes a ruling. So that is one aspect of the grand jury transcript issue here, and we think that the issue of the grand jury transcripts that the information is needed to avoid a possible injustice. Doesn't he have to say something about why the information is needed? What helpful information did Mr. Tingle think he could get from the grand jury proceedings? Yes. In regard to both parts of your question, Your Honor, he would, I think, have made an effort to make that showing if he'd been given the chance to argue, but he wasn't. Do you have any vague hint you might give us as to what he would show? Yes. I think that you would want to get the grand jury transcripts to show any inconsistencies in the testimony of the individual. Sure. Anything that you would do in order to more effectively question. If a witness testifies. Yes. Then you're entitled to the grief. Well, under the Jenks Act. That takes care of your problem. Yes. Under the Jenks Act, certainly, you get those materials, but I think the grand jury transcripts would be more widely available if our argument would be adopted here today. It's not just for the parties who are testifying. That does not warm the cockles of my heart to find out the grand jury transcripts will be available freely. So grand jury transcripts are to be protected if there is a secrecy interest that the government can show this time? There is a built-in interest that you're aware of, and so am I. That's right. What you're suggesting is that we think that is not particularly important. It can be overcome. And I think it's very important. Yes. Well, it can be overcome, but the historic roots of it were to. But you didn't try to overcome it. You have to at least allude to a showing. I didn't do that. No, you didn't do it here. What information is needed to avoid a possible injustice? I'd try another one of your issues if I were you. I will. But just to briefly respond to that, Judge Wovner, because we don't have the information that puts us in the hole, we can only speculate about what it is. But to effectively cross-examine someone and show inconsistencies in the testimony promises that they were given, things along those nature. All of the testimony any witness gives to a grand jury once the witness testifies. But only for those witnesses who testify. And that's, of course, late in the proceedings that you wish you might have that information in advance to do investigations and so forth. But I will take Your Honor's point and move on to the next issue. Good idea. Which is the judge plainly erred by allowing Agent Steele to testify about ultimate issues in the case. And, of course, under the federal rules of evidence, an expert witness may not opine on ultimate issues. And this witness, Agent Steele, did so twice. This case was not about the three controlled buys. My client admitted those. This case was about the two other charges, about the gun being used in furtherance. And Agent Steele said absolutely that it was. That's an ultimate issue. That's improper under Rule 704. He also said about the drug quantity that the intent based on the amount and the paraphernalia was for distribution. Again, a 704B violation because that's an ultimate issue. Those are things that are only to be opined about. Excuse me, never to be opined about. Of that aspect, though, just testifying that, in his experience, people that have those amounts of drugs, it's usually a distribution system, I don't think it's nuts. He's not talking about him directly in the sense of other than the fact that he had that many drugs. But, Your Honor, in the context, he is, based on the agent's experience, testifying about specifically the quantity in this case and, therefore, about Mr. Tingle. So I don't think that you could separate the two things by saying experientially these things would be suggestive of something without crossing that line in 704B and making a conclusion that is only supposed to be left to the jury with respect to. I just didn't say something like Tingle intended to distribute the meth. What he said was it was definitely for distribution. The way I read those words was to mean that the amount at issue was of the quantity that is ordinarily distributed rather than used personally. I don't think this was testimony about Tingle or his intent. Your Honor, but just in the explanation that you gave, I think that it would be inseparable in the minds of the jurors to say that that information that was just provided by Your Honor, which I think is faithful to the testimony by the agent, doesn't show that it was for distribution because he said that it was definitely for distribution. That nails down what the person's intent was who had it. I don't ever recall us keeping out that information. You're asking for something new. Well, I think it's consistent with the Third Circuit's decision in Watson and in so far as this circuit. Not the Third. That's absolutely right. And so Winbush would be, I think, our nearest case that's precedential on this subject. And we've done far more than allude to what this might be if we're even allowed to do as much as that in Winbush. We've crossed that line by saying, in this case, the gun was utilized in furtherance of. That's an ultimate issue that the expert opined on. That the drugs were definitely for distribution. Well, the location. Yes, sir. You know, we have guns. Were they in a closet? Were they under the bed? Or were they on the nightstand? Those kind of things. Right. Come in. Sure. And you can testify about all those facts. But you don't need to then draw the conclusion for the jurors. In fact, you're not allowed to under Rule 704B. And this, I think, is a common practice by prosecutors. Because jurors are impressed with experts. They want to then put expert testimony in. Except he wasn't qualified as an expert, was he? And that's another problem, in my opinion, Your Honor. But you don't need to dot all the I's and cross the T's when they are on the juror's part of the procedure. And so present the facts. But don't draw the conclusions for the jurors. And that's what the prosecutor did through listing the testimony. And that's certainly what the agent did through the testimony that he gave. The next issue then would be the Dawbird issue, which Judge Kaney just mentioned. Is there a rule in the Southern District of Indiana? It's a peculiar one. But, yes, the local rule. This isn't just a practice, then. It's a rule in there. It's a local rule. And it's a puzzling one. Because as a gatekeeper, you are the one who determines if somebody is an expert or not an expert. And yet the rule says that the... Yeah, but you do that in a foreign jury. You don't do it during the trial, particularly. Sure. Typically, it's done on the head end of things. And then the party is entitled to be voir dire, et cetera, if necessary. But the problem here is that the judge's local rule says that she will never declare the person to be an expert. And then at the very end of the trial, of course, after the government is going on, through the questioning in your expertise and in your experience and your training and back to you being an expert and so forth, the person has never been declared an expert. And then at the very end of things... I don't think that makes a lot of difference if the record shows he's an expert. But that's part of the gatekeeping problem, Your Honor. But certainly there's a violation of her own explicit local rule when at the tail end, after all the evidence has come in, she says, you've heard from experts. She's declared that in front of the jurors in contravention to the rule. Well, you're complaining about her not making him an expert. Now she did make him. Right. And what do you do at that point? Call out the local rule of the judge? Judge has violated your own local rule? It's a mess. That's right. Local rules are made to be violated. Yeah. My clients feel like a lot of rules should be broken by them, but then they're all held accountable. And so here we've got a judge who has a rule that I think is just not a good rule, and it needs to be addressed. Ms. Reola, she's not the only one, it turns out. Is she in Indiana? No. She's not alone. And so that does not make it a good rule. It just means more people are following a bad rule. No, no, no. I just wonder. I mean, I know that in one of the recent opinions, Judge Posner took enormous umbrage to this rule. Right. And, Your Honor, to that point, the government thinks that then the court has sanctified that rule in the discussion that Judge Posner had in his dissent. Of course, it was a dissent, and he didn't seem to think too well of that rule either. We think less of it, even less of it than he expressed in his dissent. The rule is not a good rule. It creates problems. It shouldn't be in effect in the way that it is. And I know that it has its roots in an ABA opinion, and I believe that it actually originated with Judge Hamilton, as I recall the case that Your Honors are alluding to, but I don't think it's a good rule all the same. And so I think it needs to be changed, and it's an additional problem that we have in this case. And that goes beyond the gatekeeping, which we are asking for an aggressive interpretation of what the gatekeeping responsibilities are, but I think that they are rooted in the text in footnote 7 of the Daubert opinion of the First Circuit's decision in Holt, as well as the Frazier opinion that we cited. So the gatekeeping responsibility is an important one. It makes sure the proceedings are reliable. District courts should make these determinations. They're allowed to do so sua sponte. We think that the rule actually requires that they do so even when not asked, and that's pertinent, of course, to the authority that I just mentioned. The fourth issue, then, would be the evidentiary hearing that we believe should have been held with respect to prosecutorial vindictiveness. It is a significant thing. It does not change the outcome of the proceedings in the sense that the others would if we were correct on those, and so I've tried to organize these in terms of where the importance of the issues leads us, but it is an important thing. Mr. Hillis, I'm having difficulty with that argument because when the government offered Mr. Tingle a plea deal, it specifically set forth the conditions that would kick in if he were to reject the deal, and the government followed through, charging Mr. Tingle exactly as it said it would when he didn't accept the plea. The plea deal was written before the government knew whether Mr. Tingle would accept the plea or not, so that seems to me evidence that the government had a planned negotiation strategy and didn't act out of spite or vengeance or that it harbored some sort of animus toward Mr. Tingle because he did not accept the plea. Your Honor, I think I agree with everything you said with this caveat. The government's explanation of the facts insofar as what it did and when it did it is the problem here because there was the lab report, and it said that the lab report contained new facts that changed the charging decision, and that explanation is irreconcilable with the record on this, and if my client is given a hearing and the judge is satisfied with the explanation of the facts and the timing of the events and so forth, that's fine, but there is that factual problem that creeps into the analysis, and it does change things because then it shows that the government did have facts that it said that it didn't, and it said that that lack of evidence was then the basis for the subsequent charging decision, and that just can't be squared, I think, with the lab report and the timing of its receipt by the government. Your argument would be that this occurred after the charge was made, was filed? No, that they had the lab report before the decision to charge, and so in the explanation they gave to the district court. But the Supreme Court has really said that any pre-charging conduct can't be vindictive or isn't vindictive. Except, I think, in this case where we have facts that show that the government explained to the district court that it was new facts that it didn't previously have that led to the charging decision, and the record, on the other hand, shows they did have those facts, and so the charging decision doesn't support the facts of the case would be my contention, Your Honor. With that, I reserve the balance of my time. Thank you. Thank you, Counsel. May it please the Court, Brian Wright for the United States. I would like to try to take those issues in reverse chronological order, starting with the prosecutorial vindictimous claim. Judge Roedner, I think you're exactly correct. Our motions and our pleas show that there was a planned negotiation strategy here. We gave Mr. Tingle about six months to accept the plea to the statutory minimum of ten years, and then when he did not, we extended that deadline two times, and when the push came to shove, we did exactly what we said we were going to do, which Judge Kaney, as you alluded to, is precisely what the Supreme Court has long said we're allowed to do as an attempt to persuade a defendant to plead, and that's all that occurred here. I'm really interested in how the U.S. Attorney feels about this Daubert business because I just don't understand how it's legitimate for judges to get around the requirements that are set forth in Daubert by simply not declaring any witness to be an expert witness and then at the end of everything say you've heard from experts. You, jury, figure out who these experts were. Your Honor, I think I have three responses to that, kind of to unpack that. First of all, this is not a way to get around or abdicate Daubert, not describe, which leads into my second point, not describing specific. A litigant can really, a litigant who wants to put on an expert witness can really game that system. A lawyer can place the witness on a pedestal and beef up the credibility and weight of the testimony by asking questions that establish her qualifications as a witness but then not have to go through the rigorous process of establishing her real qualifications. No, Your Honor. I don't get this. So I actually think the rule is implemented to do the exact opposite and prevent that lifting up. So what it does, it avoids the jury hearing from the court giving that witness the imprimatur of the court as being an expert. So this is advised in the 22,000 amendments to the rule. It says this is a good practice. Well, yeah, but the court could still do it without advising the jury. Sure. Out of the presence of the jury declare that he's an expert. Well, I think that the judge did hear. I don't think there, the argument that. Well, did only by implication that she let all that testimony come in. Right, I think that's fair. I think if you look at what Kumho Tyer says is that there's no reason for a hearing if this is taken for granted. The 10th Circuit Inquestar said there's no reason for sua sponte on the record ruling that someone is an expert. I would point the court here to. Look, if the purpose of her practice of not declaring a witness to be an expert is to prevent a jury from placing unfair weight on such a witness's testimony, didn't she eviscerate that purpose by telling the jury that they just heard testimony from experts? You can't have it both ways. Two things. I would like to answer that kind of broadly and then bring it back to the specific case. I think perhaps that there is some tension in those two things. This is the Southern District good faith attempt to square a competing interest in not having the court say someone's an expert. Unfortunately, our court has to approve those rules. Yes, Your Honor. I think if the court thinks the Southern District has misapplied that tension. No, we should say so now. Oh, I'm sorry. If the court doesn't think the court has balanced that appropriately, I think they would be open to hearing. What I wanted to get back to on this particular case is that Mr. Tingle didn't object to the local rule, and then he actually proposed the expert witness instruction. Does the district court have to conduct a preliminary assessment of the reliability of an expert sua sponte even in the absence of an objection? Yes, but there is no indication here that the judge didn't. I would point the court to docket 120. I would point the court to docket 120 where the court says specifically that she refers to docket 80, which is our proposed expert witness list, which gives not only the names but the qualifications and the content of the testimony that those experts would give. So there's every indication that the judge did actually apply her Daubert gatekeeping function. She just didn't specifically call those witnesses experts in front of the jury. That's the way Daubert works. We don't have judges in back rooms doing I don't know what. I mean, it's a very unusual situation. So I don't think so quite, Your Honor, because, again, Kumho Taya recognized there's no reason for a hearing if no one objects to the expert's qualifications. And, again, I would cite the court to the Tenth Circuit, which said there was no requirement for a sua sponte on the record finding if no one objected to it. Here, Mr. Tingle did not object to any of the witnesses, and I think all of them are clearly within the orbit of expert witnesses in their field. If the objection is to Agent Steele, he had 30 years of law enforcement experience. He thought, you know, in this case, I mean, I happen to think the procedure that ignores the rule of Daubert is legally wrong. In this case, the DEA agent could be qualified by his years of experience alone. So there may be no overall harm here. But the whole thing is very problematic. I think I would, to answer that, I would go back, and I would say that there is tension in not wanting the court, not wanting to say that someone is an expert in giving the instruction. We're not here saying otherwise. We're saying that that is the Southern District of Indiana's good faith effort to reconcile those two competing interests. If this court doesn't think that is the best precise way, so be it. But then we would also say, in this case, there was no objection to the rule, which has been long implemented in the Southern District of Indiana across multiple judges. Moreover, as to the instruction, Mr. Tingle actually proposed that instruction. So to whatever extent there is an incongruity between the two, Mr. Tingle at least forfeited the front end and likely waived the back end. But none of this is to say that the district court did not do the typical gatekeeping function that Daubert imposes. And moving on. Go ahead. Sorry, I thought Judge Roper was going to ask a question. I'm sorry. Just moving on to the last issue. Judge Keeney, you're correct on Agent Steele's, the content of his testimony, that Mr. Tingle is asking for this court to make a ruling that it never has before. His testimony, the content of his testimony, was well within the strictures of what this court has said is permissible. And the government avoided the perhaps too many pratfalls this court has warned against. And because Agent Steele wasn't a dual role witness, he only testified as an expert, not a fact witness. And we couched our questions in his training and experience and didn't leave the jury with the impression that he had special knowledge about Mr. Tingle's mental state. And if there are no further questions, the government would ask this court to affirm.  No, but thank you for asking. Thank you, Your Honor. How much time? You have a minute to. Thank you. Daubert requires explicit findings. There's a four-factor test. It's well known. You can't say that it was implicitly done when it's required that it be explicitly done. That's what satisfies. Daubert has footnote seven that I think does talk to judges about what they should do and doing it sua sponte, I think is appropriate. The standard of review should be de novo because this is a procedural issue and we've used procedural issues before to get de novo review. That should be the case here. And lastly, again, in response to judge Kaney's question and to the government's point in so far as the seventh circuit is not maybe squarely addressed the particular 704 B issue Watson has in third circuit. We think that it's very persuasive. It's largely on all fours with the point that we've raised here on the 704 B issue and it was plain air as it is here. And they found that plain air, even on that difficult standard of review, the defendant was entitled to relief. We asked this court to follow that and reach the same conclusion. Thank you. Thank you, Mr. Ellis. Thanks to both council and the case is taken under advisement.